IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| PacifiCorp, an Oregon corporation, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 09-1012-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| Public Utility District No. 2 of Grant | ) | |
| County a Washington municipal | ) | |
| corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Bruce L. Campbell
Joshua M. Sasaki
Michelle E. Barton
Miller Nash LLP
111 SW Fifth Avenue, Suite 3400
Portland , Oregon  97204

    Attorneys for Plaintiff

Page 1 - OPINION AND ORDER

G. Kevin Kiely
Raymond S. Kindley
Thomas A. Brooks
Cable Huston Benedict Haagensen & Lloyd
1001 SW Fifth Avenue, Suite 2000
Portland , Oregon  97204

   Attorneys for Defendant


KING, Judge:

  Plaintiff PacifiCorp is an Oregon energy company that buys power from defendant Public

Utility District No. 2 of Grant County ("Grant").  PacifiCorp filed the instant action because it

seeks to terminate one of its contracts with Grant.  Before the court is Grant's Motion to Dismiss

for Lack of Personal Jurisdiction (#4).  For the reasons set forth below, the motion is denied.

<strong>FACTUAL BACKGROUND</strong>

  Grant is a municipally-owned public utility district organized under the laws of the state

of Washington.  PacifiCorp is a corporation that in 1982 was incorporated in Maine, but which

later incorporated in Oregon.  In 1982, PacifiCorp and Grant entered into a Power Purchase

Agreement ("the PPA").  The PPA reports that both Grant and PacifiCorp "engage[] in the

generation, transmission, and distribution of electric power and energy in the Pacific Northwest."

Notice of Removal Ex. A ¶ 2(a) of attached PPA.  Under the terms of the PPA, Grant agreed to

sell PacifiCorp a 14-megawatt slice of the monthly electrical output from Grant's Priest Rapids

Project ("the Project"), a hydroelectric generation facility.  Under the PPA, which is not the only

contract between the parties, the points of delivery for the electricity are the Wanapum

Development and the Priest Rapids Development, both of which are located in Washington.  The

"term" provision of the PPA provided, "[t]his Agreement shall be effective for a term

Page 2 - OPINION AND ORDER

commencing September 1, 1983 and shall terminate on the later of (a) September 1, 1988, or (b) the first September 1 two years following written notice of intent to terminate given by Grant."  Notice of Removal Ex. A ¶ 4 of attached PPA.

PacifiCorp now sues seeking a declaratory judgment that either (1) "[t]he PPA is an agreement for an indefinite term and not in perpetuity, and PacifiCorp has the right to terminate the PPA on reasonable notice," or (2) "the PPA terminated by operation of law."  Compl. ¶ 11. Grant moves to dismiss, claiming it has had insufficient contact with the state of Oregon to give the court personal jurisdiction over it.

Grant, however, does have a history with Oregon energy customers.  In 1955, Grant applied to the predecessor of the Federal Energy Regulatory Commission[1] ("FERC") for a license to construct and operate the Project.  In order to grant the license, the United States Congress provided, "[t]o assure that there shall be no discrimination between States in the area served by the project, such license shall provide that the licensee shall offer a reasonable portion . . . of the power output of the project . . . [to] neighboring states."  Pub. L. No. 83-544, 68 Stat. 574 (1954). FERC has explained that Public Law 83-544 ensured "a reasonable portion of the power generated will . . . provid[e] the States of Washington and Oregon . . . with an equitable share of such power."  Kootenai Elec. Coop., Inc. v. Pub. Util. Dist. No. 2 of Grant County, Washington, 82 F.E.R.C. ¶¶ 61,112, 61,395 (1998) (emphasis added).  FERC has also explained, however, that Public Law 83-544 does not dictate that a certain percentage of Project energy must be sold to neighboring states or that energy will be sold exclusively to neighboring states.  82 F.E.R.C. ¶

---

[1]I refer to FERC, and its predecessor, the Federal Power Commission, interchangeably as "FERC."

¶ 61,112, 61,400.  Nevertheless, in furtherance of the requirement, in 1955, Grant passed

Resolution No. 281, entitled "A Resolution Offering Power from the Priest Rapids Development

for Sale within the States of Oregon, Idaho and Montana."  Decl. of PacifiCorp Custodian of

Records Ex. 1 (hereinafter, "PacifiCorp Decl.").  The Resolution provided that "31% of the

power capacity and . . . 31% of the power output of the Priest Rapids Development be . . . offered

for sale to the power marketing agencies of the State of Oregon."  PacifiCorp Decl. Ex. 1 at 1-2.

Following the Resolution, in 1956, Grant entered into a fifty-year contract with PacifiCorp.  In it,

Grant agreed to sell PacifiCorp 13.9 percent of the Project's output, "for the benefit of consumers

in the state of Oregon."  PacifiCorp Decl. Ex. 3 at 9.

     Grant sent substantial correspondence and numerous representatives to Oregon in order to

procure aid in the FERC licensing process and secure sales contracts for the output from the

Project. Grant's efforts resulted in contracts and business relationships with a number of Oregon

customers besides PacifiCorp that have continued, now, for more than half a century.  Other

long-term customers include Portland General Electric; Eugene Water and Electric Board; City

of Forest Grove, Oregon; City of McMinnville, Oregon; and City of Milton-Freewater, Oregon.

In connection with these relationships, its business in Oregon, and its business throughout the

region, Grant pays over $265,000 for membership in four regional energy organizations that are

based in Portland, Oregon.  The organizations are Public Power Council, Pacific Northwest

Utilities Conference Committee, Northwest RiverPartners and Northwest Power Pool.

     The scale of Grant's Project, and volume of power sold to Oregon customers, was and is

impressive.  In Grant's 2002 Executive Summary for its renewal application for a FERC license,

Grant wrote it is "the largest non-federal hydroelectric project of its kind in the country."  Barton

Page 4 - OPINION AND ORDER

Decl. Ex. 5 at 1. "The Project produced a total of 8.85 billion kilowatt hours of electricity in 2002, equivalent to the energy consumed in a year by a city the size of Seattle, Washington." Id. In 2008, Grant sold $65,664,345 worth of electricity. Of this total, six Oregon purchasers bought $27,447,696 worth of electricity. PacifiCorp alone purchased 18.7 percent of the Project's output for $12,279,233.

Although PacifiCorp is based in Oregon and serves a large number of Oregon customers, it serves a total of 1.5 million customers in six states. PacifiCorp "operate[s] its generation and transmission [of electricity] on a six-state integrated basis in a manner that minimizes costs to all its retail customers." Decl. Raymond Kindley Ex. 1 at 6. Grant's Project is one of several generating resources that primarily delivers electricity to PacifiCorp's customers in Washington, Oregon, and California. PacifiCorp utilizes a program called the "MSP Solution" to address billing customers in different states for power from different resources. For example, the "MSP Solution" "permits Oregon to 'opt-out' of supporting the costs of a future major coal-fired Resource that may give rise to policy concerns." Kindley Decl. Ex. 1 at 32. Under the plan, in PacifiCorp's rate-making proceedings, some portion of the cost of Project power is allocated to Oregon consumers. The exhibits do not indicate what percentage of PacifiCorp's customers reside in Oregon, or exactly how much Project energy is delivered to Oregon homes and businesses.

**DISCUSSION**

I.    Personal Jurisdiction

      PacifiCorp contends that this court has both general and specific personal jurisdiction over Grant. The plaintiff bears the burden of establishing that the court has personal jurisdiction

Page 5 - OPINION AND ORDER

over the defendant.  FDIC v. British-American Ins. Co., 828 F.2d 1439, 1441 (9th Cir. 1987).

When the burden of establishing personal jurisdiction is not satisfied, the matter is dismissed

pursuant to Federal Rule of Civil Procedure 12(b)(2).

      The jurisdictional reach of a federal court over defendants in a diversity action is

determined by the law of the forum state.  Oregon extends personal jurisdiction to the outer

limits permitted by the state and federal constitutions.  Or. R. Civ. P. 4L.  Furthermore, to

establish jurisdiction under a state's long-arm statute, the plaintiff must show both that the forum

state's long-arm statute confers personal jurisdiction over the nonresident defendants and the

exercise of jurisdiction does not violate federal constitutional principles of due process.  Gray &

Co. v. Firstenberg Mach. Co., 913 F.2d 758, 760 n.1 (9th Cir. 1990).

      Federal due process requires that a nonresident defendant have minimum contacts with

the forum state such that the exercise of personal jurisdiction does not offend traditional notions

of fair play and substantial justice.  International Shoe Co. v. Washington, 326 U.S. 310, 316

(1945).  The constitutional due process test may be satisfied by a finding of either general or

specific jurisdiction.  Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 839 (9th

Cir. 1986).

      When a court limits its jurisdictional decision to pleadings and affidavits and does not

conduct an evidentiary hearing, the plaintiff is only required to establish a prima facie showing of

personal jurisdiction over the defendant to defeat a motion under Rule 12(b)(2).  Data Disc, Inc.

v. Systems Tech. Assoc., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977).  Allegations in the complaint

must be taken as true and conflicts between the facts must be resolved in the plaintiff's favor for

purposes of deciding whether a prima facie case for personal jurisdiction exists.  American Tel.

& Tel. Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir.), supplemented on other grounds, 95 F.3d 1156 (9th Cir. 1996). If the case goes to trial, the plaintiff must prove the jurisdictional facts by a preponderance of the evidence. Sinatra v. Nat'l Enquirer, Inc., 854 F.2d 1191, 1194 (9th Cir. 1988).

      A.    General Jurisdiction

      Where a defendant has "substantial" or "continuous and systematic" contacts with the forum state, general jurisdiction is proper even if the cause of action is unrelated to the defendant's forum activities. Data Disc, 557 F.2d at 1287. It is the nature and extent of the contacts that determines whether they are "substantial" or "continuous and systematic." Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1172 (9th Cir. 2006). Longevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets are among the indicia of such a presence. Id. In addition to establishing the requisite contacts, the assertion of jurisdiction must be found reasonable. Id. at 1175.

      1.    Continuous and Systematic Contacts

      PacifiCorp argues that Grant's lengthy history in Oregon and the enormous volume of energy it sells to Oregon customers, in conjunction with Grant's reliance on sales to Oregon to maintain its FERC license, constitute continuous and systematic contacts with Oregon. Grant responds that other than the occasional sale of power, Grant does not conduct business in Oregon.

      To refute this contention, PacifiCorp points to the sheer volume of Grant's sales to Oregon entities. In 2008, Grant sold 41.8% of its output to six Oregon entities for a total of $27,447,696. To address the volume of energy Grant sells under its 50-year contracts with six

Oregon entities, Grant cites <u>Gray</u>, 913 F.2d at 760, for the proposition that "[a] contract alone does not automatically establish the requisite minimum contacts necessary for the exercise of personal jurisdiction."  It points out the Project is in Washington, the delivery point for the energy is in Washington, the Advisory Committee established under the contracts meets in Washington, and the contracts are governed by Washington law.  In addition, Grant argues it does not know how much of Project power is actually sold in Oregon, but that PacifiCorp's energy delivery system is such that it would likely use Project power to serve its retail power customers in Washington.

Grant's argument that the energy is used in Washington is undercut, however, by the language contained in Grant's 1956 contract with PacifiCorp, in which Grant agreed to sell 13.9 percent of Project output "for the benefit of consumers in the State of Oregon."  PacifiCorp Decl. Ex. 3 at 9.  In addition, although I acknowledge that one contract alone does not automatically establish general jurisdiction, Grant's contacts with Oregon are not limited to one contract. Rather, they include many contracts, lasting half a century at a time, and worth hundreds of millions of dollars.  This level of longevity, continuity, volume, economic impact, and integration into Oregon's economic markets leans heavily in favor of general jurisdiction.

PacifiCorp also argues that Grant benefits from its sales to Oregon entities because of its relationship with the Bonneville Power Administration ("BPA").  According to PacifiCorp, Grant buys power from the BPA for a lower price than it sells it to PacifiCorp and others.  This relationship allegedly allows Grant to use the BPA power to satisfy much of its own district's needs, and to sell more Project power to other entities and generate higher profits.  According to Grant, however, it does not benefit from its dealings with BPA through the arbitrage of power.  It

Page 8 - OPINION AND ORDER

contends that it sells surplus "displacement power" back to PacifiCorp at prices below the market rates for wholesale power. Although I am without adequate information to pass judgment on the economic reality of this arrangement, for purposes of the instant motion, I must resolve this factual dispute in favor of PacifiCorp. American Tel., 94 F.3d at 588. In addition, it is undisputed that Grant's arrangement with BPA is but one more contact with Oregon.

PacifiCorp also urges that in order for Grant to obtain the license to operate the Project, Public Law 83-544 required Grant to offer power to neighboring states, including Oregon. PacifiCorp stresses that FERC has explained the language in Public Law 83-544 was meant to "*provid[e] the States of Washington and Oregon as well as neighboring States* with an equitable share of such power if the project [was] developed in accordance with the provisions of this bill." Kootenai, 82 F.E.R.C. ¶¶ 61,112, 61,395 (emphasis original). Grant concedes the law requires Grant to sell a reasonable portion of Project power in neighboring states, but cites Kootenai for the proposition that Public Law 83-544 does not specifically restrict transmission of Project power to any particular state.

I find Grant's argument unpersuasive. The FERC license was required to provide that "the licensee shall offer a reasonable portion . . . of the power output of the project . . . [to] neighboring states." Pub. L. No. 83-544, 68 Stat. 574 (1954). FERC has been explicit that the requirement existed to ensure that Oregon received an equitable share of power. See Kootenai, 82 F.E.R.C. ¶¶ 61,112, 61,395. While it may be true that Public Law 83-544 doesn't specify exact percentages of Project power that must be sold to Oregon, and doesn't restrict where other power can be sold, these omissions do not nullify the requirement. I am convinced that some

degree of sales to Oregon were a condition of issuance of the FERC permit.  This fact leans further in favor of general jurisdiction.

PacifiCorp reasons that the language of Resolution No. 281, the correspondence sent to Oregon in the 1950s to secure the 50-year contracts, and Grant's membership in Portland-based energy groups all add to the totality of Grant's contacts with Oregon.  Grant contends the correspondence it sent to Oregon in the 1950s was not sufficient to constitute minimum contacts because  repeated communication with residents of another state cannot alone establish a continuing relationship.  Furthermore, according to Grant, its correspondence was for the purpose of soliciting aid with its FERC license, not for soliciting business.  Grant also urges that its memberships in Portland-based energy groups are inconsequential since the groups' interests are regional.  I acknowledge that none of these contacts alone would be sufficient for general jurisdiction.  Nevertheless, each adds to the totality of Grant's contacts with Oregon.

PacifiCorp and Grant also differ on the significance of  Alderson v. Southern Co., 747 N.E.2d 926 (Ill. App. 2001), a case involving personal jurisdiction and the cross border transmission of electricity.  In Alderson, an Indiana power producer delivered power exclusively to Illinois under a 15-year contract.  Id. at 947.  The Indiana power producer was very close to the Illinois state line and owned an easement over an Illinois private road that allowed access to the Indiana power plant.  Id. at 935.  The delivery point for the power was in Indiana, but the Indiana power producer sold exclusively to Illinois, and fully realized "most, if not all, of the Plant's output [would] be utilized" in Illinois.  Id. at 941, 932.  The Alderson court held "[b]ecause [out-of-state sellers] have directed their activities toward the [forum state's] marketplace and have derived economic benefit as a result of those activities, the fact that the sale of electricity to [the

Page 10 - OPINION AND ORDER

forum state customer] is technically carried out [out-of-state] is of no consequence." Id. at 947. The Alderson court found that the Indiana power producer's contacts with Illinois were continuous and systematic, and held that general jurisdiction existed. Id.

While Alderson is not binding precedent upon this court, it is persuasive and supports PacifiCorp's argument. Without comparing the facts in detail, I note it is similar inasmuch as substantial amounts of energy sold across state lines was a significant fact in favor of finding general jurisdiction existed. I find another case, however, to be more instructive.

In Tuazon, 433 F.3d at 1175, the Ninth Circuit Court of Appeals held that the United States District Court for the Western District of Washington was correct in holding it had general jurisdiction over cigarette manufacturer and seller R.J. Reynolds. The Tuazon court noted that Reynolds had "a serious presence in Washington for more than a half-century and generate[d] enormous revenues from Washington– hundreds of millions of dollars in annual net sales in recent years." Id. at 1173. Reynolds held a license to do business in the state since 1940, advertised in purely local publications since the 1950s, engaged in local political activity, and maintained an office and workforce in the state. Id. The court noted that sufficient minimum contacts for general jurisdiction were "established by the confluence of Reynolds' physical, economic, and political presence and the company's myriad other activities in the state." Id. at 1174-75.

The facts of this case parallel Tuazon and satisfy its indicia. Grant has sold substantial amounts of energy to Oregon customers in long-term sales contracts since the 1950s. Oregon's largest energy providers have paid Grant hundreds of millions of dollars. Grant explicitly relied on its sales to Oregon customers to obtain and maintain its FERC license. Grant pays substantial

sums of money annually to belong to and attend meetings of energy industry groups that are based in Portland. Although Grant maintains no personnel physically present in Oregon, its energy literally powers Oregon's homes and businesses.

Each of Grant's arguments to the contrary revolves around the proposition that the contact in question cannot *alone* establish general jurisdiction. Yet whether facts exist indicating continuous and systematic contacts sufficient to justify general jurisdiction is an issue that must necessarily be analyzed cumulatively. Here, there is no question that Grant's contacts with Oregon have been continuous and systematic for more than 50 years.

2.    Reasonableness

_____In addition to establishing the requisite contacts, the assertion of jurisdiction must be found reasonable. Tuazon, 433 F.3d at 1175. The burden is on the defendant to present a compelling case that the exercise of jurisdiction would be unreasonable. Id. The Ninth Circuit considers seven factors in assessing the reasonableness of jurisdiction: 1) the extent of the defendant's purposeful interjection into the forum state's affairs; 2) the burden on the defendant; 3) the forum's interest in adjudicating the dispute; 4) the importance of the chosen forum to the plaintiff's interest in obtaining relief; 5) the most efficient forum for judicial resolution of the dispute; 6) the shared interest of the several States in furthering fundamental substantive social policies; and 7) the existence of an alternative forum. Id.

Grant argues the first through third and seventh factors dictate the conclusion that the exercise of personal jurisdiction is not reasonable. Specifically, Grant makes the following arguments. Under the first factor Grant did not "purposefully interject" itself into Oregon because PacifiCorp was incorporated in Maine at the time the contract was signed. Under the

Page 12 - OPINION AND ORDER

second factor it would be burdensome to defend the suit in Oregon because its records and witnesses are in Washington. Under the third factor the State of Washington has an interest in the case because Grant is a Washington municipal corporation, and Oregon's interest in adjudicating the dispute is diminished by the PPA's clause choosing Washington law. Finally, under the seventh factor, Grant argues that Washington is an available alternative forum.

At oral argument, however, Grant's council conceded it knew PacifiCorp was selling energy in Oregon. Furthermore, as I noted above, its 1956 PacifiCorp contract proves it knew that Project energy would be used "for the benefit of consumers in the state of Oregon." In addition, as PacifiCorp reasons, depositions of Grant witnesses will likely take place in Washington, and discovery will likely be produced in electronic format. Moreover, PacifiCorp persuasively argues that because the price of Project energy is significantly above market price, Oregon has a significant interest in adjudicating this dispute. Although I acknowledge the existence of Washington as an alternative forum, for the above reasons I conclude that Grant has failed to present a compelling case that the exercise of jurisdiction would be unreasonable.

Therefore, I conclude PacifiCorp has established a prima facie showing that this court has general personal jurisdiction over Grant.

However, even if PacifiCorp had failed to establish a prima facie showing of general jurisdiction, I alternatively hold that it has also made a prima facie showing of specific jurisdiction.

B.    Specific Jurisdiction

When general jurisdiction is inappropriate, the Ninth Circuit has recognized application of a three-part test to determine whether specific jurisdiction exists:

Page 13 - OPINION AND ORDER

> (1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum, (2) the claim arises out of or results from the defendants' forum-related activities, and (3) the exercise of jurisdiction is reasonable.

Mattel, Inc. v. Greiner and Hausser GMBH, 354 F.3d 857, 863 (9th Cir. 2003).

The first element ensures that a "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). The connection between defendant and the forum state must come about by

> an action of the Defendant purposefully directed toward the forum State. The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. . . . [A] defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum state.

Asahi Metal Indus. v. Superior Court of Cal., 480 U.S. 102, 112 (1987).

Grant argues it did not purposefully avail itself of Oregon's laws through its contract with PacifiCorp because when it entered into the PPA, PacifiCorp was incorporated in Maine. Grant cites Bachman v. Medical Engineering Corp., 81 Or. App. 85, 89, 724 P.2d 858, 861 (1986) to establish that "a plaintiff's move to another state does not transport personal jurisdiction with it." This argument, however, for reasons already mentioned, does not hold water since Grant knew its energy would be sold to Oregon consumers. The open-ended contract Grant consummated with PacifiCorp for significant amounts of energy, together with its knowledge that its product was for the benefit of Oregon consumers, was conduct such that Grant should reasonably expect to be haled into court in Oregon.

Page 14 - OPINION AND ORDER

For the second <u>Mattel</u> element, the Ninth Circuit uses a "but for" test to conduct its analysis. <u>Mattel</u>, 354 F.3d at 864. Grant contends that PacifiCorp's claim does not arise out of its interactions with any Oregon entity. "Rather, PacifiCorp's claims relate wholly to the interaction between Grant and PacifiCorp, which does not include any Oregon-related contacts." Mem. Supp. Def.'s Mot. Dismiss Lack Personal Jurisdiction 9. This argument borders on nonsense. I find more persuasive PacifiCorp's reasoning that this lawsuit arises out of the PPA, and because the PPA relates directly to Grant's sales to Oregon customers, the action arises out of forum-related activities. Put otherwise, but-for Grant's sale of energy to Oregon customers, there would be no PPA with PacifiCorp and no lawsuit to end the PPA.

In analyzing the third <u>Mattel</u> element, a court considers the same reasonableness factors for specific jurisdiction as it does for general jurisdiction. <u>Compare</u> <u>Tuazon</u>, 433 F.3d at 1175 nn.4-5 (discussing reasonableness factors for general jurisdiction and acknowledging adequacy of other generally recognized reasonableness factors), <u>with</u> <u>Roth v. Garcia Marquez</u>, 942 F.2d 617, 623 (9th Cir. 1991) (analyzing most of the same reasonableness factors for specific jurisdiction). I have already addressed why jurisdiction over Grant is reasonable under these factors. Accordingly, I hold PacifiCorp has established a prima facie case that this court has specific jurisdiction over Grant.

My finding that the elements of personal jurisdiction are satisfied by the PPA is consistent with precedent in the District of Oregon. In <u>City of Springfield, ex rel. Springfield Util. Bd. v. Wash. Pub. Power Supply Sys.</u>, 564 F.Supp. 86, 87 (D. Or. 1983), Springfield sought a declaration that it had authority to enter into billing agreements with, among other entities, the Washington Public Power Supply System ("WPPSS"). WPPSS moved to dismiss for lack of

personal jurisdiction on the grounds that its contacts with Oregon were insufficient to support

personal jurisdiction.  <u>Id.</u> at 90.  Judge Redden held that because WPPSS had executed contracts

with other Oregon entities that were parties to the suit, and because WPPSS "interjected [itself]

into this forum by receiving the benefits of doing business here," specific jurisdiction existed.  <u>Id.</u>

In sum, PacifiCorp has made a prima facie showing that this court has personal

jurisdiction over Grant.

## CONCLUSION

Grant's Motion to Dismiss for Lack of Personal Jurisdiction (#4) under Rule 12(b)(2) is

denied.

IT IS SO ORDERED.

Dated this _____16th_____ day of November, 2009.


   /s/ Garr M. King
Garr M. King
United States District Judge


Page 16 - OPINION AND ORDER