IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | | |
|---|---|---|
| PacifiCorp, an Oregon corporation, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 09-1012-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| Public Utility District No. 2 of Grant County, a Washington municipal corporation, | ) ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Bruce L. Campbell
Joshua M. Sasaki
Michelle E. Barton
Miller Nash LLP
111 SW Fifth Avenue, Suite 3400
Portland , Oregon  97204

Attorneys for Plaintiff

Page 1 - OPINION AND ORDER

G. Kevin Kiely
Raymond S. Kindley
Thomas A. Brooks
Timothy Daly Smith
Cable Huston Benedict Haagensen & Lloyd, LLP
1001 SW Fifth Avenue, Suite 2000
Portland , Oregon  97204

      Attorneys for Defendant

KING, Judge:

This is a declaratory judgment and breach of contract action, removed from Multnomah County Circuit Court, in which plaintiff PacifiCorp seeks to terminate a contract with defendant Public Utility District No. 2 of Grant County, Washington ("Grant").  The parties have filed cross motions for partial summary judgment.

## Factual Background

In 1961, PacifiCorp and Bonneville Power Administration ("BPA") entered into a power transmission agreement ("the Vantage Agreement").   Section 4 of the Vantage Agreement contained a rate provision permitting BPA to make changes every three years.  Over the lifetime of the Vantage Agreement, BPA periodically changed the rate under Section 4 until the Vantage Agreement expired on October 31, 2009.

In 1982, PacifiCorp and Grant entered into an Agreement for Sale of Power ("the Power Purchase Agreement" or "PPA"), under which PacifiCorp agreed to purchase a 14-megawatt output from Grant.

Section 4 of the PPA contains the following provision:

Term

Page 2 - OPINION AND ORDER

This Agreement shall be effective for a term commencing September 1, 1983, and shall terminate on the later of (a) September 1, 1988, or (b) the first September 1 two years following written notice of intent to terminate given by Grant; PROVIDED, HOWEVER, that Grant shall not terminate this Agreement in order to sell the electric power and energy made available hereunder other than to its own retail customers. The parties agree that this provision is not intended to prohibit Grant from maintaining a reasonable resource reserve margin nor to prohibit Grant from terminating this Agreement rather than acquiring any other resource or power supply other than power and energy available to Grant from the Priest Rapids Project. Upon termination of this Agreement, any obligations then accrued or incurred shall be preserved until satisfied.

PPA, Compl., Exhibit 1 ¶ 4. The PPA is governed by Washington law. Id. at ¶ 11.    Under

the PPA, pricing for the power sold to PacifiCorp by Grant was to be the larger of two rates: (a)

the difference obtained by applying BPA's NR-1 New Resource Firm Power Rate or its

successor rate and subtracting from the result the amount obtained by multiplying 14,000

kilowatts by the charge provided for in Section 4 of the Vantage Agreement, or (b) 35.0 mills

per kilowatt hour. Amended Compl. ¶ 17; PPA ¶ 8.

When the Vantage Agreement expired, Casey Sprouse, a senior marketing manager at

Grant, sent an email dated December 7, 2009 to Laurie Barbeau, a PacifiCorp billing manager, as

follows:

Hey Laurie, the spread sheet you sent mentions the expiration of your transmission agreement with BPA [the Vantage Agreement]. What do you suggest we do for November? Do you have a new transmission contract with BPA that would apply to our agreement?

Campbell Decl., Ex. 11. In response, Barbeau proposed using the BPA point to point ("PTP")

transmission rate, subject to the "existing billing and contract dispute" between Grant and

PacifiCorp:

Effective 11/1/09, the transmission contract with BPA [the Vantage Agreement] used in the billing of the 14 MW contract between our companies has been replaced with the firm BPA PTP service. Notwithstanding the existing billing and contract dispute, the credit

should now be based on the current BPA firm PTP rate (currently at $1.298/kW mo).
This credit for November would be calculated as 14,000 kW times $1.298/kW mo. or
$18,172.

Id.  PacifiCorp and Grant have used the PTP rate since the Vantage Agreement expired.  Barbeau

does not have authority to amend, extend or enter into contracts.  Sprouse at that time had

authority to enter into contracts on behalf of Grant for the purchase and sale of energy, so long as

the contracts were of no more than one year's duration, 130,000 megawatts, or $3.5 million.

The wholesale market price for power has now fallen below the price provided for in the

PPA.  On April 9, 2009, PacifiCorp met with Grant to discuss PacifiCorp's right to terminate the

PPA.  During that meeting, Grant denied that PacifiCorp had the right to terminate the PPA.  The

parties continued the discussions until PacifiCorp filed this action on July 28, 2009.

The Amended Complaint asserts four claims:  two for declaratory judgment and two for

breach of contract.  As its First Claim, PacifiCorp seeks the following declarations from the

court:  1) the PPA is an agreement for an indefinite term and not in perpetuity; 2)  PacifiCorp has

the right to terminate the PPA on reasonable notice; 3)  the filing of the complaint and the

passage of a reasonable period thereafter as determined by the court constitutes such reasonable

notice of termination.  The Second Claim is a for breach of contract, asserting that Grant

breached the express terms of the PPA or the implied covenant of good faith and fair dealing by

refusing to recognize PacifiCorp's right to terminate the PPA.   The Third Claim seeks a

declaration that the PPA expired on its own terms October 31, 2009, because the Vantage

Agreement expired on that date, and thereby eliminated an essential price term of the PPA. [1]

_____

[1] As its Fourth Claim, not moved against here, PacifiCorp alleges that in October 2001,
Grant began billing PacifiCorp for BPA ancillary service charges, including scheduling, reactive,
regulation and frequency and operating reserve charges, that are associated with the movement of

PacifiCorp moves for partial summary judgment on three issues:  1) Grant is subject to personal jurisdiction in this court; [2] 2) the PPA terminated on October 31, 2009, as a matter of law, because the PPA required the Vantage Agreement to provide an essential term of the PPA, i.e., price, so that when the Vantage Agreement expired, the PPA terminated for lack of an essential term; and 3) even if the PPA did not terminate with the Vantage Agreement, PacifiCorp is entitled to terminate the PPA by giving reasonable notice to Grant, which it gave when it filed this action.

Grant moves for partial summary judgment in its favor on 1) PacifiCorp's Second Claim, because Grant has not breached either an express or implied term of the PPA; [3] and 2) PacifiCorp's declaratory relief claims (First and Third Claims)  if the court dismisses the Second Claim, based either on its discretion to do so or on the merits.

---

energy.  These charges were approximately $10,000 a month.  PacifiCorp asks that the court declare the ancillary service charges not appropriate because PacifiCorp does not purchase transmission services from Grant, and that it has told Grant so, but that it continues to be charged for those services.
    Grant admits that it has been and continues to charge for the ancillary services, but denies that all of them are associated with the movement of energy.

    [2] In an Opinion and Order entered November 16, 2009, the court held that PacifiCorp had made out a prima facie case of both general and specific jurisdiction over Grant (doc. # 16). Although Grant has asserted lack of personal jurisdiction as an affirmative defense, it no longer contests the court's jurisdiction.

    [3] Initially, PacifiCorp asserted that Grant had breached an express term of the PPA, but this was clearly a mistake, since there is no express term in the PPA allowing PacifiCorp to terminate.  PacifiCorp now asserts this claim as one for breach of the implied covenant of good faith and fair dealing.

Page 5 - OPINION AND ORDER

## STANDARDS

The PPA is governed by Washington law.  Under Washington law, interpretation of a contract consists of ascertaining the meaning of a promise or agreement.  Berg v. Hudesman, 115 Wash.2d 657, 663, 801 P.2d 222 (1990) (en banc), citing Restatement (Second) of Contracts § 200 (1981).  On the other hand, construction of a contract is a "process by which legal consequences are made to follow from the terms of the contract and its more or less immediate context, and from a legal policy or policies that are applicable to the situation."  Id. (Internal quotation and citation omitted).

Washington courts apply the "context rule" rather than the "plain meaning rule" in interpreting contracts.  Id., 115 Wash.2d at 667, 801 P.2d at 228-29.  Under the context rule, the court may look beyond the four corners of an agreement to determine its meaning, regardless of whether the language of the contract is ambiguous:

> Determination of the intent of the contracting parties is to be accomplished by viewing the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of respective interpretations advocated by the parties.

Id. at 228.

Washington courts also follow the objective manifestation theory of contracts, which means the court determines the parties' intent by looking at the objective manifestations of the agreement, rather than the unexpressed subjective intent of the parties.  Hearst Communications, Inc. v. Seattle Times Co., 154 Wash.2d 493, 503, 115 P.3d 262 (2005); see also U.S. Life Credit Ins. Co. v. Williams, 129 Wash.2d 565, 570, 919 P.2d 594, 597 (Wash. 1996) ("Unilateral or

subjective purposes and intentions about the meanings of what is written do not constitute

evidence of the parties' intentions.") (Internal quotation and citation omitted).

    In contract cases, summary judgment is proper if the parties' written contract has only one

reasonable interpretation.  See, e.g., Hall v. Custom Craft Fixtures, Inc., 87 Wash. App. 1, 9, 937

P.2d 1143 (1997) (interpreting the provisions of a contract is a question of law when the

interpretation does not depend on the use of extrinsic evidence or there is only one reasonable

inference from the extrinsic evidence).

    Contract provisions are to be read *in pari materia* with the entire agreement and in light

of all the circumstances surrounding the contract.  Stender v. Twin City Foods, Inc., 82 Wash.2d

250, 254, 510 P.2d 221 (1973).  See also Eurick v. Pemco Ins. Co., 108 Wn.2d 338, 341, 738

P.2d 251 (1987) (Court should give a practical and reasonable interpretation, and avoid strained

or forced constructions of contracts that lead to absurd results).

    Washington law recognizes an implied duty of good faith and fair dealing in every

contract.  Badgett v. Sec. State Bank, 116 Wash.2d 563, 569, 807 P.2d 356 (1991).  However, a

party does not breach the duty of good faith by simply standing on its contractual rights.  Id. at

570.

alternatively, the claims for declaratory relief should be dismissed on the merits.

## DISCUSSION

**First Claim for Relief**

    1.    Is the PPA an agreement for an indefinite term or a perpetual one?

    PacifiCorp commences its argument with the premise that perpetual agreements are

disfavored by the courts, so a contract will not be deemed perpetual unless it clearly and

unequivocally calls for perpetual performance.  Pacificorp relies on three cases involving

perpetual leases.  Oak Bay Props., Ltd. v. Silverdale Sportsman's Ctr., Inc., 32 Wash. App. 516,

519, 648 P.2d 465, 467 (Wash. App. 1982)  (perpetual leases "are disfavored" and "interpreted to

avoid this result whenever possible");  Hay v. Chehalis Mill Co., 172 Wash. 102, 109, 19 P.2d

397, 400 (Wash. 1933) (unless deed allowing for removal of timber "clearly manifests an

intention on the part of the grantor to convey a perpetual right to enter upon the land and remove

the timber, the purchaser will be allowed only a reasonable time");  Eastgate I-90 Office Bldg.

P'ship v. Woodley, No. 61924-1-I, 2009 WL 1119589 at *2 (Wash. Ct. App., Apr. 27, 2009)

(perpetual leases are disfavored and will be recognized only where intent to create such a right is

manifest").

PacifiCorp asserts that because the PPA neither imposes a term on its  performance nor

expressly states that PacifiCorp's contractual obligations are perpetual, the PPA is properly

considered an agreement for an indefinite term, which PacifiCorp can terminate upon reasonable

notice.[4]  See, e.g., Cascade Auto Glass Inc. v. Progressive Cas. Ins. Co., 135 Wash. App. 760,

766, 145 P.3d 1253, 1256 (Wash. Ct. App. 2006):  "When a contract for a continuing

performance fails to specify the intended duration, we construe it to be terminable at will by

either party after a reasonable time."

---

[4] The first sentence of section 4 provides that the PPA is to be effective for at least five
years, stating that the PPA commences on September 1, 1983, and  terminates on September 1,
1988, or the first September 1 two years after written notice of intent to terminate by Grant,
whichever is later.  The remainder of section 4 restricts Grant's right to terminate to
circumstances when termination is necessary for Grant's maintenance of a reasonable resource
reserved margin or when Grant will be forced to acquire any power supply other than that
available from the Priest Rapids Project to satisfy its obligations under the PPA.

PacifiCorp also points to two pieces of extrinsic evidence: the pricing formula under the PPA was based on the Vantage Agreement, which had a definite term and expired in October 2009, indicating that the parties did not intend the PPA to go on forever, and the fact that at the time the parties executed the PPA, the power Grant sold to PacifiCorp was from the Priest Rapids Project, which operated under a FERC license expected to expire in 2005.

Grant counters that PacifiCorp's argument depends on the premise that the PPA contains neither a term nor termination provisions, which is not the case. Grant points out tht the PPA has a minimum term of five years and contains express terms providing for termination. Grant cites United States v. Foster Transfer Co., 183 F.2d 494, 496-97 (9th Cir. 1950) (doctrine that a contract without a term can be terminated with reasonable notice does not apply where the contract contains language providing for termination) and Burke & Farrar v. Campbell, 128 Wash. 646, 652, 224 P. 9, 11 (1924) (doctrine does not apply if duration of agreement can be determined from the express terms of the agreement and the necessarily implied terms, cited in Foster Transfer). Grant argues that while Section 4 of the PPA does not contain provisions for termination by *PacifiCorp,* it does contain provisions for termination by Grant, subject to certain conditions. Thus, according to Grant, the mere absence of any express reference to termination rights for one of the two parties to the agreement does not mean that the PPA has an indefinite term. It simply means that the PPA can terminate only if and when Grant terminates it, according to the conditions set out in the PPA.

Grant has offered affidavit testimony from Donald Long, former Assistant Manager for Grant and the only living person to have participated in the negotiation and drafting of the PPA. Long states in the affidavit that the parties drafted Section 4 to prevent either Grant or PacifiCorp

from terminating the PPA simply because either party could make a better economic deal with a third party.  Affidavit of Donald E. Long ¶¶ 4. 6.  Long states that he "expected" the PPA to remain in effect "for a long time," and states the reasons for those expectations, one of them being that since PacifiCorp had no right to terminate the PPA, he expected the contract to "extend until Grant decided to terminate the PPA."  Long states that the PPA does not provide PacifiCorp with any termination rights because "that was part of the consideration Grant received in exchange for Pacific's right to receive firm power at less than or equal to Pacific's avoided cost for wholesale power in the early 1980s."  Id. at ¶ 13.

Based on this testimony, Grant argues that PacifiCorp now attempts to do the very thing the parties intended to preclude in the PPA, which is terminate the PPA for the sake of a better economic deal elsewhere.

Although Grant asserts that Long's testimony constitutes "context" to help determine the intent of the parties, see Berg, 115 Wash.2d at 666-68, the court concludes that Long's testimony constitutes evidence of subjective intent that is precluded by the objective manifestation contract theory applied in Washington courts.  See McGuire v. Bates, 169 Wash.2d 185, 188-89, 234 P.3d 205, 206 (Wash. 2010) (Subjective intent of parties generally irrelevant if court can impute an intention corresponding to the reasonable meaning of the actual words used). The PPA itself nowhere states or suggests that PacifiCorp has surrendered termination rights as consideration for the right to receive firm power. Nor does the PPA contain any provision stating or indicating that the parties intended the PPA to preclude either of them from ever making a better economic deal with another party.

Page 10 - OPINION AND ORDER

The court rejects Grant's position because it requires the court to construe the PPA in a manner that makes it impossible for PacifiCorp to terminate the agreement under any circumstances whatsoever, an unreasonable and inequitable result. See Berg, 115 Wash.2d at 663 (construction is process by which legal consequences are made to follow from the terms of the contract, its context, and from applicable legal policies).

      2.      <u>Does PacifiCorp have a right to terminate the PPA on reasonable notice?</u>

The court concludes that the only reasonable construction of the PPA is to give PacifiCorp the right to terminate the agreement upon two years' written notice.

      3.      <u>Does the filing of the complaint constitute such notice?</u>

The court finds nothing in the PPA itself or its context that provides a basis for declaring that the filing of a complaint constitutes notice of termination, particularly since PacifiCorp continues to purchase power from Grant under the authorization of the PPA.

**<u>Second Claim for Relief</u>**

      1.      <u>Has Grant breached the implied covenant of good faith and fair dealing by refusing to recognize PacifiCorp's right to terminate the PPA?</u>

PacifiCorp concedes that Grant has not breached any express term of the PPA; the only remaining breach of contract claim is based on the implied covenant of good faith and fair dealing. Grant argues that its conduct has not breached the covenant, because its conduct simply reflects its decision to stand on its rights under the PPA, including the absence of any termination right for PacifiCorp. Grant relies on two insurance cases, <u>Kirk v. Mt. Airy Ins. Co.</u>, 134 Wash. 2d 558, 560, 951 P.2d 1124, 1126 (1998) and <u>Bryant v. Country Life Ins. Co.</u>, 414 F. Supp.2d 981, 996 (W.D. Wash. 2006)(citing <u>Kirk</u>).

Further, Grant argues that, regardless of whether PacifiCorp believes it has a termination right under the PPA, PacifiCorp has not attempted to exercise such a contractual right. Instead, it has sought to terminate the PPA by initiating a court proceeding seeking a declaration that right, while continuing to purchase power from Grant under the PPA.

The court concludes that PacifiCorp cannot claim to have terminated, or even to have attempted to terminate, the PPA, because PacifiCorp continues to purchase power from Grant. PacifiCorp seeks to have the court deem the filing of this action a notice of termination. In view of the fact that both PacifiCorp and Grant have continued to perform under the PPA, the court concludes, first, that the PPA has not been terminated by either party and, second, that the mere filing of a complaint while continuing to accept the benefits of the agreement does not constitute a termination by PacifiCorp.

In essence, PacifiCorp's claim for breach of the implied covenant is based on Grant's having taken the litigation position that PacifiCorp has no express or implied contractual right to terminate the PPA. Since PacifiCorp does not deny that it has no such express right, its argument is that Grant has breached the implied covenant by disputing the existence of an implied right by PacifiCorp to terminate the PPA. Such a claim has no merit. Under Washington contract law, Grant was not obligated under the implied covenant to "recognize" a right not expressly provided by the contract and, moreover, one that remains purely theoretical since PacifiCorp has not exercised or even attempted to exercise that right so far. See Badgett, 116 Wash.2d at 570 (party does not breach the duty of good faith by standing on its contractual rights).

2.        Should the court exercise its discretion to dismiss the declaratory relief claims?

Grant argues under the Declaratory Judgment Act, 28 U.S.C. § 2201, the court has discretion to decline the exercise of jurisdiction over claims for declaratory relief.  Huth v. Hartford Ins. Co. of the Midwest, 298 F.3d 800, 802 (9th Cir. 2002).  Grant argues that PacifiCorp's First, Third and Fourth Claims for Relief arise exclusively from Washington contract law, and that it would be a waste of judicial resources for this court to craft a declaration on Washington contract law.

The court is unpersuaded by this argument, especially in view of the fact that Grant removed this case from Multnomah County Circuit Court to this court, but now seeks to have this court decline jurisdiction in favor of a state court.

The legal standard for determining whether to exercise jurisdiction over a declaratory judgment claim is found in Brillhart v. Excess Ins. Co. of America, 316 U.S. 491 (1942) (district court should avoid needless determination of state law issues, discourage declaratory actions as a means of forum shopping, and  avoid duplicative litigation) and Gov't Emp. Ins. Co. v. Dizol, 133 F.3d 1220, 1225 (9th Cir. 1998).  In Principal Life Ins. Co. v. Robinson, 394 F.3d 665, 672 (9th Cir. 2005), the court noted that "[e]ssentially, the district court must balance concerns of judicial administration, comity, and fairness to the litigants." (Internal quotations and citation omitted).

There is no other state court litigation, so this court is not called upon to make a needless determination of state law issues or avoid duplicative litigation.  Nor would dismissal of the declaratory judgment claims discourage forum-shopping, since, as mentioned, PacifiCorp originally filed its action in state court and Grant invoked the federal forum.  If the court

dismissed PacifiCorp's declaratory judgment claims, the consequence would be the duplication of PacifiCorp's efforts in another state court.

Grant's request that the court exercise its discretion to decline jurisdiction over the declaratory relief claims is denied.

**Third Claim for Relief**

    1.    <u>Did the PPA expire as a matter of law when the Vantage Agreement expired?</u>

PacifiCorp contends that because the price term of the PPA was tied to the Vantage Agreement, the PPA expired with the Vantage Agreement, because price is an essential term without which the PPA could not continue to remain in effect. PacifiCorp contends that there is no extrinsic evidence suggesting that the PPA was intended to outlive expiration of the Vantage Agreement, and that any attempt to determine price without using the Vantage Agreement's rate would essentially rewrite the PPA.

Grant counters that the Vantage Agreement rate is not the price term for the PPA, but merely a component of the pricing formula under the PPA. Grant argues that the Vantage Agreement provides no more than a proxy or offset for the subtraction of transmission costs, not a price term, so that it is not an essential term. Further, Grant argues, the parties' continued performance after expiration of the Vantage Agreement reveals that "the parties found a new rate to replace the Vantage rate," thereby demonstrating that the Vantage Rate was "easily replaceable." Def.'s Reply, p. 13. Consequently, it was neither impossible nor impracticable for the parties to continue performing under the PPA after expiration of the Vantage Agreement.

Grant also contends that the parties clearly did not intend for the PPA to terminate on October 31, 2009 because 1) both parties were aware of the Vantage Agreement's expiration date

but did not include this date in the termination clause; and 2) the parties continued to perform

under the PPA by agreeing to preserve the status quo, using the BPA PTP rate, pending

resolution of this case.

The court concludes that the ease with which the parties negotiated another interim rate

demonstrates that the Vantage Agreement's rate provision was not an essential term of the PPA.

Moreover, as discussed above, it is unreasonable to construe the PPA as having expired with the

Vantage Agreement because both parties have continued to perform under the PPA since the

expiration of the Vantage Agreement.

## CONCLUSION

PacifiCorp's Motion for Summary Judgment (doc. # 36) is granted in part and denied in

part, as follows: GRANTED with respect to the declaration that Grant is entitled to terminate the

PPA upon reasonable notice; DENIED AS MOOT on the issue of personal jurisdiction over

Grant; DENIED with respect to a declaration that the PPA terminated as a matter of law when

the Vantage Agreement expired; and DENIED with respect to a declaration that PacifiCorp's

filing this action constitutes reasonable notice of termination.

Grant's motion for summary judgment (doc. # 41) is GRANTED for PacifiCorp's Second

Claim for Relief, and DENIED for Grant's request that the court exercise its discretion to dismiss

PacifiCorp's declaratory relief claims.

IT IS SO ORDERED.

Dated this _____25th_____ day of January, 2011.


                              _/s/ Garr M. King_____
                              Garr M. King
                              United States District Judge

Page 15 - OPINION AND ORDER